IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>MICHAEL C. SIBLEY | Criminal Action No.<br><br>1:15-CR-339-AT |

**Government's Sentencing Memorandum**

The United States of America, by John A. Horn, United States Attorney, and Tracia M. King, Assistant United States Attorney for the Northern District of Georgia, files this memorandum in support of the government's sentencing recommendation.

INTRODUCTION

On December 15, 2014, the Defendant pled guilty to a one-count Information that charged him with conveying false information in violation of Title 18, United States Code, § 1038. (Doc. 24). For the reasons that follow, under the terms of the Plea Agreement, the government and the defendant recommend a sentence of 24 months in custody to be followed by a period of supervised release.

FACTUAL BACKGROUND

The United States proffers that on or about November 4, 2014, Mr. Sibley placed a backpack alongside one of the trails in Vickery Creek Park, which is a part of the Chattahoochee River National Recreation Area and located in the Northern District of Georgia. (PSR ¶6, Doc. 24). On November 4, 2014, local law

1

enforcement contacted FBI about the discovery of the suspicious bag. (*Id.*) An inspection of that bag, with had the name Mina Khodart handwritten on it, revealed two improvised explosive devices, also known as pipe bombs. (PSR ¶¶6, 10). Approximately 400 nails and screws were attached to the outside of the tubing consistent with construction designed for maximum fragmentation upon explosion, thus making the device more lethal. (PSR ¶6). The pipe bombs also appeared to be ready for remote detonation given that they contained wires designed for use with a circuit board that was also located in the backpack. (*See* Attachment A).

Further examination, however, established that the weapons did not have a power source and switch component, which were required to remotely cause the explosion. (*Id.*) Specifically, the pipe bombs were designed to be remotely detonated with a garage door opener. (*Id.*) Mr. Sibley is self-employed as a person who installs and repairs garage doors and openers. (PSR ¶44). However, if the weapons had fallen into the wrong hands, the devices could have been detonated by simply adding a power source, such as a battery.

The name written on the backpack is a name that appears to be a Muslim-sounding name. The backpack also contained two books: one titled "The Rape of Kuwait" and the other titled "The Holy Qur'an." (PSR ¶10). Further examination of the bag revealed papers printed from three websites: a schedule for the 2015 season Atlanta Falcons games, a printout from Marcus Jewish Community Center of Atlanta, and the Metropolitan Atlanta Rapid Transit Authority ("MARTA"). (PSR ¶¶ 7, 10).

Based on the items recovered from the backpack, the FBI's investigation resulted in the identification of eight possible suspects, including Mr. Sibley. (PSR ¶8). Through the process of elimination and interviews, the FBI narrowed its focus to Mr. Sibley who eventually confessed after he was confronted about the incident. (PSR ¶8,9, 10). He admitted to, among other things, making the pipe bombs, purchasing the books, writing the name on the backpack, and placing the bag in the park. (*Id.*) Mr. Sibley stated that he did these things to make people aware that this kind of terroristic activity could happen anywhere. (*Id.*)

## DISCUSSION

A. The Enhancement Pursuant to 2A6.1(b)(1) Is Appropriately Applied.

The Presentence Report ("PSR") provides that the Defendant's base offense level is 12 pursuant to the application of U.S.S.G. § 2A6.1. (PSR ¶ 15). A six-level enhancement is applied pursuant to U.S.S.G. § 2A6.1(1), which states that a base offense level is increased "[i]f the offense involved any conduct evidencing an intent to carry out such threat." U.S.S.G. § 2A6.1(b)(1). The Probation Officer applied the enhancement based on Mr. Sibley's use of destructive devices to make his threat. The Defendant urges that this increase is improper because he had no intent to carry out the threat. This argument should be rejected.

When a district court is determining whether U.S.S.G. § 2A6.1(b)(1) is applicable, it may consider the overt activity connected to the threat along with the seriousness of the threat itself. *United States v. Carter*, 111 F.3d 509, 513 (7th Cir. 1997). When a defendant engages in "[s]erious conduct committed before or

3

during the offense" that indicates the defendant's intent to carry out the threat, then the six-level enhancement should apply. *United States v. Scott*, 441 F.3d 1322 (11th Cir. 2006); *see also United States v. Hornick*, 942 F.2d 105, 108 (2nd Cir. 1991).

With these principles in mind, the facts of the instant case provides evidence indicating that Mr. Sibley had an intent to carry out his threat. Mr. Sibley used the writing on the backpack and the contents of the backpack to convey to the community that a Muslim was making a threat to commit a terroristic attack. The threat was not just limited to the pipe bombs located in the park. The contents of the backpack were specifically chosen to convey that Atlanta Falcons home games, the Marcus Jewish Community Center of Atlanta, and MARTA were also targets for terrorist attacks.

To ensure the threat was taken seriously, Mr. Sibley engaged in conduct designed to convince the community that the likelihood of these attacks taking place were real. Mr. Sibley made two pipe bombs which were completely assembled with nails, screws and explosives and only lacked a power source to be remotely detonated.

The FBI investigation established that Mr. Sibley was self-employed as an installer and repairer of garage doors and openers. (*See also* PSR ¶44). Therefore, he had the means available to return to the park to complete the devices. If that bag had not been discovered when it was, there was nothing to prevent Mr. Sibley from doing just that - returning with the power source and a garage door opener to complete the device for remote detonation. And more importantly, except for its discovery by law enforcement, there was nothing to prevent any

other person such as a child, a criminal, or a terrorist from obtaining these weapons.

Additionally, since the backpack contained the veiled threats to three specific locations and real pipe bombs, Mr. Sibley's threat was designed to demonstrate to the public that he had the knowledge and the skill to make real pipe bombs to carry out those threats.  Thus, Mr. Sibley's conduct at the park via the use of real pipe bombs provided evidence of his intent to carry out threats at other specified locations.  Therefore, the six-level enhancement is appropriately applied.

B.  A Variance From The Guidelines Range Is Appropriate Under the Factors Set Forth at 18 U.S.C. § 3553(a).

In determining a reasonable sentence, the Court should begin by correctly calculating the applicable Guidelines range.  *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 596 (2007); *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).  From there, the Court should assess the factors set forth in Title 18, United States Code, § 3553(a) to determine a reasonable sentence. *Gall*, 552 U.S. at 49-50; *Pugh*, 515 F.3d at 1189-90.  The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, the need for the sentence to  provide just punishment, the protection of the public, and the need to provide the defendant with needed medical care.  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir.2007).

Typically, the government recommends a sentence within the properly calculated Guidelines range because the Guidelines often yield a sentence that accurately reflects a defendant's culpability relative to similarly-situated individuals. The Guidelines do so by incorporating such critical elements as a defendant's criminal history, the severity of the instant offense, and mitigating or aggravating factors such as role in the offense, abuse of position of trust, and the vulnerability of the victims. Occasionally, when the government determines that the Guidelines do not adequately capture the severity (or lack thereof) of a defendant's crimes, the government may seek a departure or variance.

In this case, the PSR calculated the Defendant's sentencing guidelines range to be 30 to 37 months in custody with a term of supervised release authorized for up to 3 years. (PSR at p.13). The government and the defendant, however, are recommending a sentence variance and that the Court imposes a sentence of 24 months in custody to be followed by a period of supervised release. Such a variance below the Guidelines would be reasonable under the factors set forth in § 3553(a). The government's analysis of those factors and the grounds for its recommendation are detailed below.

1. The Jointly Recommended Sentence Reflects the Nature, Circumstances and Seriousness of the Offense; and Provides Just Punishment.

Paragraph 15 of the Guilty Plea and Plea Agreement provides that "[t]he Government will recommend that the Defendant be sentenced to a term of imprisonment of 24 months. The Defendant will not oppose the Government's

recommendation." (Doc. 27).  This recommendation reflects the seriousness of offense conduct while providing just punishment for Mr. Sibley.

When considering whether the recommendation is just punishment, it needs to be noted that the recommendation should be Mr. Sibley's conduct includes his manufacture and possession of two destructive devices.[1]  This conduct was in violation of Title 26, United States Code, § 5861.  Had the government filed these otherwise clearly appropriate charges and convicted Mr. Sibley for violating this statute, the applicable Sentencing Guidelines provision would have been § 2K2.1.  Pursuant to that section, Mr. Sibley could have been exposed to an offense level as high as 24.[2]  The resulting guidelines range with a Criminal History Category I

---

[1] Title 26, United States Code, § 5845 defines a destructive as

> (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device, . . . (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

[2] Mr. Sibley's base offense level would have started at level 18.  U.S.S.G. § 2K2.1(a)(5).  A two level increase would apply because the offense involved destructive devices.  U.S.S.G. § 2K2.1(b)(3)(B).  An additional four level increase could apply because the destructive devices were used or possessed in connection with another felony.  U.S.S.G. § 2K2.1(b)(6)(B).

is 51-63 months.[3]  This range is more than twice as high as the joint recommendation.

This recommendation takes into account Mr. Sibley's age.  Shortly after he was identified as a person of interest, Mr. Sibley confessed and spared the government of having to prove his guilt.  Indeed, Mr. Sibley accepted responsibility early and even waived his right to have his case presented to the grand jury.  Thus, he saved the government from the expenditure of a lot of resources to resolve this matter.

In making this recommendation, the government is not in any way diminishing the seriousness of Mr. Sibley's conduct.  He created two pipe bombs which he recklessly left in the park.  The backpack containing those devices could have been stolen and those devices could have been detonated by someone else.

The recommendation also takes into consideration the nature of Mr. Sibley's crime.  Mr. Sibley simultaneously victimized both the Muslim and Jewish communities by his wrongful conduct.  Mr. Sibley made a threat that was designed to cast aspersions on one community while causing unnecessary fear in another community.   He intentionally tried to exploit and ignite prejudices in the community through his criminal conduct.

---

[3] If Mr. Sibley entered a guilty plea to the § 5861 violation, the guidelines range after a reduction for acceptance of responsibility would 37 to 46 months.  This is still higher than the guidelines range calculated by the U.S. Probation Office.

Although defense counsel suggests to the court that a sentence of probation should be considered, the government submits that Mr. Sibley's conduct is far too egregious for such a light sentence.  Besides, Mr. Sibley has already enjoyed the benefit of receiving a reduced sentence once the government agreed not to charge him with the more serious crime of manufacturing and possessing destructive devices.

## Conclusion

Considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends that this Court impose a sentence of 24 months in custody followed by a period of supervised release.

Respectfully submitted,

JOHN A. HORN
   *United States Attorney*

/S/TRACIA M. KING
TRACIA M. KING
   *Assistant United States Attorney*
Georgia Bar No. 421380

## Certificate of Service

I served this document today by filing it using the Court's CM/ECF system, which automatically sends electronic notification to the parties and counsel of record.

>**Jerome J. Froelich**
>McKenney & Froelich
>One Midtown Plaza
>1360 Peachtree Street
>Suite 910
>Atlanta, GA 30309

February 5, 2016

>/s/ TRACIA M. KING
>TRACIA M. KING
>
>*Assistant United States Attorney*